IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IAISHA THOMAS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DISTRICT 1199C, NATIONAL UNION | : | NO. 24-6113 |
| OF HOSPITAL AND HEALTH CARE | : | |
| EMPLOYEES, AFSCME, AFL-CIO | : | |

MEMORANDUM

Bartle, J.                                              April 7, 2026

Plaintiff Iaisha Thomas has sued her former employer, District 1199C, National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO ("District 1199C"), for employment discrimination and retaliation under the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12102, et. seq.), the Pennsylvania Human Relations Act ("PHRC") (43 P.S. §§ 951, et. seq.), and the Philadelphia Fair Practices Ordinance ("PFPO") (Phila. Code §§ 9-1101, et seq.).  Plaintiff asserts she was terminated because of her chronic depression and anxiety.

Before the court is the motion of the defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The court previously dismissed some claims under Rule 12(b)(6).

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court views the facts and draws all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

In employment discrimination cases, the summary judgment standard "is applied with added rigor . . . [because] intent and credibility are crucial issues." White v. Presbyterian Med. Ctr. of Univ. of Pennsylvania Health Sys., No. 20-6362, 2022 WL 3213534, at *2 (E.D. Pa. Aug. 8, 2022) (quoting Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir. 1997)) (internal quotation marks omitted).  Our Court of Appeals has stated that "summary judgment is . . . rarely appropriate in this type of case." Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 509 (3d Cir. 1996).

The court, in reviewing a motion for summary judgment, must only consider the factual citations of the parties to the record.  The court has no obligation to scour the record otherwise to find a genuine dispute of material fact.  See Langman v. Keystone Nat'l Bank & Tr. Co., 672 F. Supp. 2d 691, 694 (E.D. Pa. 2009).  As our Court of Appeals has noted, "[j]udges are not like pigs, hunting for truffles buried in briefs." United States v. Starnes, 583 F.3d 196, 216 (3d Cir. 2009) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

II

The following facts, as cited by the parties, are undisputed.

District 1199C is a labor union that serves as the collective bargaining representative of individuals working as

hospital and health care employees in the Philadelphia area. Chris Woods, the former President of the union, hired plaintiff as an administrative assistant in October 2018.  Woods was a friend of her brother.  She assisted with processing dues, answering phones, and other tasks assigned by the union.  She held what was deemed to be a confidential position.

Before May 2023, plaintiff's mother became ill.  As a result, plaintiff was granted some leniency with her work schedule although she did not request or receive days off, the ability to work remotely, or other formal accommodations. Defendant, however, was flexible if she was running late or had to handle something related to her mother.

On May 3, 2023, plaintiff e-mailed two officers of defendant, Elyse Ford and Kim Kinsler, that she "need[s] to be out of office due to personal health concerns.  After seeing the doctor, she ordered that I take a 30 day health break to address concerns [I am] [sic] having."  The email attached a note from Jennifer L. Kraft, Certified Nurse Practitioner from the Internal Medicine Department of the Hospital of the University of Pennsylvania, that stated:

> To whom it may concern:
>
> Ms. Iaisha Thomas has been under my care and she should be excused from work due to many stressors and needs a stress leave for 5 weeks beginning 5/1/23-6/2/23 and may return 6/5/23.  If there are any questions or need

-4-

> for more information please contact our
> office at . . . .

The attached note was dated May 2, 2023.  Ford replied to the email with a copy to Kinsler:

> Iaisha,
>
> For clarification you have requested a 30 day health break which commenced on May 1, 2023 per your request through [her employee benefits].  An email will be sent to staff today informing them you will be out of work, I ask that you also put up an automatic response on your email . . . Rohan will be providing you with further information regarding your benefit time in a separate email.
>
> If you need anything, please feel free to contact me.

Kinsler responded to that email saying: "So noted."  Plaintiff was surprised at the medical request that she be excused from work for thirty days of stress leave and had not talked to defendant about the request prior to seeking medical help.

On May 4, 2023, plaintiff's mother died.  Plaintiff was out the entire month of May 2023, except possibly for May 1 and May 2, 2023.  Plaintiff testified that Ford was helpful in her taking leave.  Defendant utilized a "temp agency" to fill plaintiff's role while she was on leave.

Plaintiff returned to work on June 5, 2023 and worked an event for defendant that night.  On the way home from the

event, she was in a car accident.  She sent two emails to Ford

about taking time off due to the accident.  The first, sent on

June 6, 2023 at 6:50 a.m., stated:

> Good morning,
>
> I was in a car accident on my way home last
> night.  I was hit pretty bad and car may be
> totaled.  I'm okay for the most part,
> however, I won't be in today as I have to
> take care of the logistics concerning the
> accident.
>
> Thanks,
> Iaisha

Her second email, sent on June 7, 2023 at 10:41 a.m., stated:

> Good morning,
>
> After going to get checked out after feeling
> the aftermath of the accident, I have been
> advised to rest.  I've been put on a pain
> management regiment for a few days and will
> return Monday morning.  I have attached a
> note for your records.
>
> Best,
> Iaisha

The attached note was from someone at Patient First in Abington,

Pennsylvania.  It specified that "injury" was the reason for

plaintiff's requested leave.  Plaintiff's email to Ford did not

mention the loss of her mother or any alleged disability other

than the car accident.  She was then out of work for the rest of

the week and returned on June 12, 2023.

On June 13, 2023, plaintiff went to see Certified Nurse Practitioner Kraft at the Internal Medicine Department of the Hospital of the University of Pennsylvania.  She received the following note from Kraft:

June 13, 2023

Patient Name: Iaisha Thomas
Address:
Date of Birth:

To whom it may concern:

Please excuse the above named person from WORK 6/13-7/7/23, returning Monday 7/10/23.

__x__ The patient had an appointment today at our office.

Sincerely,
Jennifer L. Kraft

She continued to work from June 13, 2023 through June 20, 2023. She did not provide the note or other documentation to defendant.

When plaintiff came into work on June 20, 2023, four officers of defendant had a meeting with plaintiff and terminated her employment.  The officers did not state a reason for her termination at the meeting.

Defendant presented evidence that it was planning on firing plaintiff on two prior occasions, but she was not present on either day.  It provided two major reasons for her termination.  The first was poor performance related to the

-7-

union's arbitration filings and notice letters.  Defendant had warned her that she needed to improve her performance prior to termination.  In addition, she was terminated because she held a confidential staff position and was a friend of Chris Woods, who had been removed as President of defendant after some controversy.

                                III

        Plaintiff argues that defendant violated the ADA by firing her because of her chronic depression and anxiety. Defendant counters that plaintiff never presented it with any medical documentation that she suffered from depression and anxiety and never even told it that she had been diagnosed with these conditions.

        Under the ADA, employers are prohibited from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  See 42 U.S.C. § 12112(a); Butler v. Fedex Supply Chain, Inc., No. 23-01295, 2026 WL 801426, at *15 (M.D. Pa. Mar. 23, 2026).  The same legal standard that applies to ADA applies equally to disability discrimination claims under the PHRA and PFBO.  See Colwell v. Rite Aid Corp., 602 F.3d 495, 499 n.3 (3d Cir. 2010); Ditko v. Project Home, No. 21-5095, 2022 WL

                                -8-

23024315, at *1 n.1 (E.D. Pa. June 16, 2022); Bowdren v. Cristo Rey Phila. High Sch., No. 22-4716, 2023 WL 3362580, at *4 (E.D. Pa. May 10, 2023).

Disability discrimination and retaliation cases are subject to the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework.  See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022); Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667-68 (3d Cir. 1999); Ransom-Ellison v. Childrens Hosp. of Philadelphia, No. 24-6308, 2026 WL 446642, at *5 (E.D. Pa. Feb. 17, 2026).  Under this framework, the plaintiff must produce sufficient evidence of her prima facie case of discrimination or retaliation.  Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).  The burden then shifts the defendant to come forward with a legitimate, non-discriminatory or non-retaliatory justification for their action.  Id.  If defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered explanation is pretextual.  Id.

To state a claim for employment discrimination under the ADA, a plaintiff must allege that she has a disability within the meaning of the ADA, she was "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer," and she "suffered an otherwise adverse employment decision as a result of

-9-

discrimination."  Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220-21 (3d Cir. 2024).  Plaintiffs are disabled within the meaning of the ADA if they: (1) have "a physical or mental impairment that substantially limits one or more" of their "major life activities"; (2) have "a record of such an impairment"; or (3) are "regarded as having such an impairment." Id. at 221.  To be successful on a discrimination claim, the employer must have notice of the disability.  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999); Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380-81 (3d Cir. 2002); Keenan v. Nazareth Hosp., No. 23-2754, 2025 WL 2233659, at *5 (E.D. Pa. Aug. 5, 2025).

Diagnoses of depression and anxiety have been recognized as impairments under the ADA.  See, e.g., Keenan, 2025 WL 2233659, at *6.  Termination is the quintessential adverse employment action.  See, e.g., Aguiar v. Morgan Corp., 27 F. App'x 110, 112 (3d Cir. 2002).  Even assuming that plaintiff had these disabilities, it is undisputed that she never supplied defendant with any medical or other documentation to this effect.  Furthermore, Ford (as well as two other officers of the union) testified that plaintiff never revealed that she had these conditions.  Plaintiff cited no timely

evidence to the contrary.[1]  Her first two requests for time off in May and early June 2023 were only for stress and for her injury after her car accident.  She does not assert or cite any authority that stress is a recognized disability under the ADA and does not maintain that she was fired because of her accident.  Her last medical note for time off, dated June 13, 2023, did not provide any reason. Plaintiff could not have suffered an adverse employment action because of her disabilities when defendant was unaware of such disabilities. Accordingly, defendant's motion for summary judgment on plaintiff's claims of disability discrimination will be granted.

---

[1]    Plaintiff simply relies on her January 12, 2026 Declaration in which she stated: "On June 12, 2023, I had a conversation with Elyse Ford, and explained that I was suffering from stress and anxiety due to my mother's passing and requested a reasonable accommodation to have additional time off."  This declaration was not submitted until 45 days after discovery had concluded and over a month after defendant had filed its motion for summary judgment.  The court will not consider this belated declaration about her report of anxiety to Ford.  A party may not create a material issue of fact to defeat summary judgment by filing a sworn statement "entirely unsupported by the record and directly contrary to [other relevant] testimony." Daubert v. NRA Grp., LLC, 861 F.3d 382, 392 (3d Cir. 2017) (internal quotation marks omitted).  The doctrine "undoubtedly applies" if such an affidavit is submitted after the close of discovery and after a defendant files its summary judgment motion. J.R. v. Lehigh Cnty., No. 09-6207, 2012 WL 12897435, at *4 (E.D. Pa. July 20, 2012), aff'd, 534 F. App'x 104 (3d Cir. 2013).

VI

Defendant also argues that there is no evidence to support plaintiff's retaliation claims.

A prima facie claim of retaliation under the ADA requires allegations that: (1) a plaintiff be engaged in a "protected activity"; (2) the plaintiff be subjected to an adverse employment action"; and (3) a causal connection between the protected activity and the adverse employment action exists. Ransom-Ellison, 2026 WL 446642, at *5 (citing Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022)). Protected activity under the ADA includes retaliation against an employee for requesting an accommodation. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003); see also id. As noted above, retaliation claims brought under the PHRA and PFPO are governed by the same analysis as those brought under the ADA. Bowdren, 2023 WL 3362580, at *4. Plaintiff never requested accommodations for depression and anxiety, and defendant never knew about her conditions. To prevail on an ADA retaliation claim, an employer must know that an employee is engaging in a protected activity. See Emmell v. Phoenixville Hosp. Co., LLC, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018); see also Han v. Temple Univ., 807 F. Supp. 3d 442, 457 (E.D. Pa. 2025). Otherwise, there would be no causal connection between the protected activity and the adverse employment action.

Emmell, 303 F. Supp. at 332; see also Davis v. Davis Auto, Inc., No. 10-3105, 2011 WL 5902220, at *9 (E.D. Pa. Nov. 22, 2011), aff'd, 509 F. App'x 161 (3d Cir. 2013).

Because defendant was unaware of plaintiff's depression and anxiety prior to her termination, plaintiff could not have suffered an adverse employment action because of any protected activity.[2]  Accordingly, her retaliation claims fail, and summary judgment will also be granted as to these claims.

V

For the above reasons, the court will grant the motion of the defendant for summary judgment.

---

[2]     Plaintiff does not allege nor cite any authority that she was engaged in a protected activity in her opposition to the motion for summary judgment.  Her opposition does not assert any arguments for her claims of retaliation.